IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GINA ANDERSEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 19 C 5812 |
| | ) | |
| PHILLIP MORRIS USA INC., a | ) | Judge John Z. Lee |
| foreign corporation, R.J. REYNOLDS | ) | |
| TOBACCO COMPANY, a foreign | ) | |
| corporation, LIGGETT GROUP LLC, | ) | |
| a foreign corporation, and | ) | |
| WALGREEN, CO., an Illinois | ) | |
| corporation. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Gina Andersen filed a products liability action in the Circuit Court of Cook County against Defendants Phillip Morris USA Inc., R.J. Reynolds Co., and Liggett Group LLC (together "Manufacturer Defendants") along with Walgreen Co. ("Walgreens"). Invoking diversity jurisdiction, the Manufacturer Defendants removed the case to federal court. Andersen has now moved to remand the case to state court [44]. For the reasons provided below, that motion is granted.

## Background

I.  **Factual Allegations**[1]

The complaint alleges that, for decades, the Manufacturer Defendants participated in a marketing campaign to minimize the health risks associated with smoking. Def.'s Ex. 1, Compl., ¶¶ 31–41, ECF No. 1. As part of that campaign, they attempted to cast doubt on scientific studies that linked cigarettes with cancer. *Id.* ¶¶ 34–37. They also commissioned their own research on tobacco products. *Id.* ¶ 38.

Over the years, Walgreens kept in regular contact with the Manufacturer Defendants. *Id.* ¶ 133. In a testament to the strength of their relationship, a Walgreens executive once offered to "take part in the smoking and health controversy on the side of the tobacco industry" and to "get the true word [out]." *Id.* ¶¶ 134–36. How the Manufacturer Defendants responded to that proposal remains unclear.

The complaint alleges that, in time, Walgreens learned about the health risks associated with cigarettes. In 1993, Walgreens's knowledge led to a request that cigarette makers indemnify it against customer lawsuits. *Id.* ¶ 137. Similarly, R.J. Reynolds later informed Walgreens in a presentation that "[n]o tobacco product has been shown to be safe and without risks." *Id.* ¶ 138. Despite those warnings, Walgreens continued to sell cigarettes. *Id.* ¶ 140.

---

[1]  When reviewing a motion to dismiss, the Court assumes that the facts alleged in the complaint are true and draws all reasonable inferences in favor of the Plaintiff. *See Heredia v. Capital Mgmt. Servs. L.P.*, 942 F.3d 811, 814 (7th Cir. 2019).

By virtue of its communications with the Manufacturer Defendants, Walgreens knew more about the hazards posed by tobacco products than the general public, Andersen says. *Id.* ¶¶ 125–27. The Walgreens website, for example, cautions that cigarettes contain about "7,000 chemicals . . . in every puff." *Id.* ¶ 128. It also warns that "smoking affects you more than you know." *Id.* And it explains that tobacco products harm users' eyes, ears, heart, and reproductive organs. *Id.* According to Andersen, these facts are not generally known. *Id.* ¶ 131.

In short, the Manufacturer Defendants produced cigarettes. *Id.* ¶¶ 4–6. Walgreens sold them. *Id.* ¶ 7. Andersen smoked them. *Id.* ¶¶ 2–3. And she contracted laryngeal cancer as a result. *Id.* ¶ 6.

## II. Procedural History

Andersen filed suit against Walgreens and the Manufacturer Defendants in the Circuit Court of Cook County, Illinois on July 19, 2019. Compl. ¶ 6. Soon after Andersen submitted her complaint, the Manufacturer Defendants removed the case to federal court based on diversity jurisdiction. In the notice of removal, they argued that there is complete diversity between Plaintiff, an Illinois citizen, and the Manufacturer Defendants, who are citizens of foreign countries. To support that argument, the Manufacturer Defendants urged the Court to disregard the citizenship of Walgreens, an Illinois corporation, because (as they see it) Andersen fraudulently joined it to this action. In response, Andersen has moved to remand this case, arguing that she did not fraudulently join Walgreens.

3

## Legal Standard

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *United States v. Wahi*, 850 F.3d 296, 299 (7th Cir. 2017) (citation and quotation marks omitted). One basis of federal jurisdiction is diversity jurisdiction, which gives federal courts authority to adjudicate civil actions "where the matter in controversy exceeds the sum or value of $75,000 . . . and is between citizens of different States." 28 U.S.C. § 1332(a)(1). For a civil action to fall within federal courts' diversity jurisdiction, there must be complete diversity, meaning that no plaintiff is a citizen of the same state as any defendant. *Krueger v. Cartwright*, 996 F.2d 928, 931 (7th Cir. 1993) (citing *Strawbridge v. Curtiss*, 7 U.S. 3 Cranch 267 (1806)).

When a plaintiff files a civil action in state court, the defendant may remove the action if a federal court would have had jurisdiction to hear the case at the time the plaintiff originally filed it. 28 U.S.C. § 1441(a); *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). A defendant seeking to remove a case bears the burden of establishing federal jurisdiction. *Tri-State Water Treatment, Inc. v. Bauer*, 845 F.3d 350, 352 (7th Cir. 2017). If a federal court lacks jurisdiction over a case removed from state court, the case must be remanded. 28 U.S.C. § 1447(c); *Walton v. Bayer Corp.*, 643 F.3d 994, 998 (7th Cir. 2011).

Courts "interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum." *Doe v. Allied-Signal, Inc.*, 985 F.2d at 911. As such,

"any doubts about the propriety of removing a particular action should be resolved against allowing removal." *Wirtz Corp. v. United Distillers & Vintners N. Am., Inc.*, 224 F.3d 708, 715 (7th Cir. 2000).

## Analysis

The Manufacturer Defendants do not dispute that Andersen and Walgreens are both citizens of Illinois. They argue, however, that the Court should disregard Walgreens's citizenship because it was fraudulently joined to this action.

It is well-established that "[d]iversity jurisdiction cannot be destroyed by joinder of nondiverse parties if such joinder is fraudulent." *Hoosier Energy Rural Elec. Coop., Inc. v. Amoco Tax Leasing IV Corp.*, 34 F.3d 1310, 1315 (7th Cir. 1994) (citation and quotation marks omitted). To show fraudulent joinder, a removing defendant must demonstrate that, "after resolving all issues of fact and law in the plaintiff's favor," there is no "reasonable possibility" that the plaintiff could state a cause of action against the defendant in state court. *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992). "If the removing defendant meets this heavy burden, the federal district court may disregard the citizenship of certain nondiverse [parties], assume jurisdiction over a case, dismiss the nondiverse [parties], and thereby retain jurisdiction." *Morris v. Nuzzo*, 718 F.3d 660, 666 (7th Cir. 2013) (citations and internal quotation marks omitted).

Here, Andersen brings negligence (Count VII) and strict liability (Count VIII) claims against Walgreens. If either claim enjoys a "reasonable possibility" of success, then the Manufacturer Defendants have not established that Andersen fraudulently

5

joined Walgreens, and the case must be remanded. *Poulos*, 959 F.2d at 73. The Court's analysis begins—and, in this case, ends—with Andersen's strict liability claim.

As a general matter, "entities in the distributive chain of an allegedly defective product . . . are strictly liable in product liability actions for injuries resulting from that product." *Murphy v. Mancari's Chrysler Plymouth, Inc.*, 887 N.E.2d 569, 574 (Ill. App. Ct. 2008). Under Illinois's "sellers' exception" statute, however, courts must dismiss "a non-manufacturing defendant if that defendant files an affidavit certifying the correct identity of the manufacturer." *Mitchell v. Philip Morris USA Inc.*, No. 18 C 7739, 2019 WL 1787587, at *2 (N.D. Ill. Apr. 24, 2019) (citing 735 Ill. Comp. Stat. 5/2-621). Because Walgreens submitted such an affidavit, the Manufacturer Defendants maintain there is no reasonable possibility that a state court would allow Andersen's strict liability claim to go forward.[2]

But the seller's statute does not foreclose all strict liability claims against non-manufacturers. As relevant here, that statute dictates that "a non-manufacturer defendant should not be dismissed if the plaintiff can show that the non-

---

[2] In a footnote, the Manufacturer Defendants also argue that Andersen's strict liability claim is "premised only on a failure to warn," and that the Federal Cigarette Labeling and Advertising Act preempts such claims. Defs.' Resp. at 15 n.10 (citing 15 U.S.C. § 1334(b)). At this preliminary stage, however, the Court must view the complaint in the light most favorable to Andersen, and there is nothing in the complaint that conclusively limits Andersen's strict liability claim to one based upon a failure to warn. *See Mitchell*, 2019 WL 1787587, at *4 (reviewing a similar complaint and refusing to "construe [it] so narrowly as to only encompass a failure-to-warn theory"). Accordingly, the issue of preemption cannot be resolved until after discovery as to the precise scope of the claim.

6

manufacturing defendant had actual knowledge of the defect in the product which caused the injury." *DeLuca v. Liggett & Myers, Inc.*, No. 00 C 7781, 2001 WL 629398, at *3 (N.D. Ill. May 24, 2001) (citing 735 Ill. Comp. Stat. 5/2-621(c)(2)). Put differently, if a seller "had actual knowledge of the unreasonably dangerous nature of the [product]," then a strict liability claim that would otherwise be barred by the seller's statute may proceed. *Murphy*, 887 N.E.2d at 575. Accordingly, the success of Andersen's claim hinges on whether Walgreens recognized cigarettes as "unreasonably dangerous." *Id*.

To predict how a state court would answer that question, it is first necessary to understand what counts as an unreasonably dangerous product under Illinois law. In identifying such products, Illinois courts employ two different tests: the risk-utility test and the consumer-expectations test. *See Suarez v. W.M. Barr & Co., Inc.*, 842 F.3d 513, 520 (7th Cir. 2016). Because Andersen's complaint does not highlight alternate cigarette designs, the risk-utility test provides little guidance. But the consumer-expectation test does. That test specifies that a product is unreasonably dangerous if it "fail[s] to perform as safely as an ordinary consumer would expect." *Id*. (citations and quotation marks omitted). So, if Walgreens knew that cigarettes were more dangerous than consumers expected, then the seller's statute would not preclude Andersen's strict liability claim.

Mindful that the fraudulent joinder standard "is even more favorable to the plaintiff than the [Rule 12(b)(6)] standard," the Court finds that, assuming the allegations in the complaint to be true, Andersen enjoys a reasonable possibility of

7

success on her strict liability claim. *Schumacher v. Sterigenics U.S., LLC*, 394 F. Supp. 3d 837, 847 n.4 (N.D. Ill. 2019) (citing *Schur*, 577 F.3d at 764). According to Andersen, Walgreens maintained a "close relationship . . . with the tobacco industry" for decades. Compl. ¶¶ 134–36. The best example is that Walgreens offered to "take part in the smoking and health controversy" and "get the true word [out] about" cigarettes. *Id*. As another judge reviewing similar allegations reasoned, this "close communication with tobacco industry leaders" could have enabled Walgreens to "obtain[ ] knowledge . . . that was not otherwise available to . . . the average smoker." *See Smith v. Phillip Morris USA Inc.*, No. 18 C 6397, 2019 WL 4750119, at *3 (N.D. Ill. Sept. 30, 2019). Like in *Smith*, the complaint sufficiently alleges that Walgreens may have known more about cigarettes from its relationship with cigarette manufacturers than a typical consumer. As such, there is a reasonable possibility that a state court could find that the seller's statute does not foreclose Andersen's strict liability claim.

In response, the Manufacturer Defendants cast "[Andersen]'s assertion that Walgreens possessed superior knowledge [a]s contrary to the entire thrust of her complaint." Pl.'s Resp. at 14. It is true that Andersen's allegations indicate that cigarette producers conspired "to conceal information from the healthcare community." *Id*. at 14–15 (citing Compl. ¶¶ 72, 102). But that does not establish that the Manufacturer Defendants withheld information from Walgreens. Over the course of their relationship, the Manufacturer Defendants had many opportunities to share non-public information with Walgreens. And, given that Walgreens volunteered to

8

"take . . . the side of the tobacco industry," the Manufacturer Defendants had good reason to believe that they could trust Walgreens with sensitive information. Compl. ¶¶ 134–36.

The Manufacturing Defendants also rely upon an affidavit filed by a Walgreens executive to refute the allegations made against Walgreens. *See* Defs.' Ex. 6, Dale Johnson Decl. ¶ 15 (averring that "Walgreens did not possess any knowledge concerning . . . the effects of cigarettes that was not available to the general public"). Although a court is not limited strictly to the pleadings and may consider evidence outside the pleadings when analyzing fraudulent joinder, it must be careful not to "pre-try" the case. *Smith*, 2019 WL 4750119, at \*2 (citations omitted). Accordingly, it is wise for a court to disregard affidavits that "deny[ ] the plaintiff's allegations or otherwise address[ ] the merits of the case." *Dillon v. Naman, Howell, Smith & Lee, PLLC*, No. 18-CV-00470, 2018 WL 2933602, at \*4 (N.D. Ill. June 12, 2018). Mr. Johnson's declaration falls squarely within those bounds.

As a last resort, the Manufacturer Defendants' compare this case with ones where courts determined that cigarette distributers had been fraudulently joined. In those cases, the plaintiffs relied on conclusory assertions to connect distributers (such as Walgreens) with cigarette manufacturers. *See Int'l Bhd. of Teamsters Local 734 Health & Welfare Tr. Fund v. Philip Morris, Inc.*, No. 97 C 8113, 1998 WL 242130, at \*5 (N.D. Ill. May 8, 1998) (finding that only "wholly conclusory" assertions "tie[d] the distributor defendants into the alleged wrongdoing"); *Clay v. Philip Morris USA Inc., et al.*, No. 18 C 3549 (N.D. Ill. Nov. 6, 2018), ECF No. 72 (observing that "the

9

Complaint does not contain any supporting claims—only conclusory assertions" and distinguishing a case where the plaintiff alleged that defendants "w[ere] in regular communication"). But, unlike the plaintiff in *Teamsters* and *Clay*, Andersen has alleged specific facts that suggest that the Manufacturer Defendants may have shared information about cigarettes' health consequences with Walgreens.

Ultimately, because Walgreens obtained special knowledge about cigarettes (at least, according to Andersen), the seller's exception statute may not apply, and thus Andersen's strict liability claim enjoys a reasonable possibility of success.[3] It follows that the Manufacturer Defendants have failed to establish that Andersen fraudulently joined Walgreens.

Of course, discovery may prove Andersen wrong and support the assertions in the Johnson declaration. But it is not the Court's role to delve into the merits of the allegations at this preliminary stage. And, to the extent that Andersen's allegations lack any good faith grounds, Defendants may seek appropriate redress from the state court. For these reasons, the motion to remand is granted.[4]

---

[3] Arguing in the alternative, Andersen also submits that because dismissal under the seller's statute is conditional, there is a reasonable possibility that a state court could reinstate her strict liability claim. *See* 735 Ill. Comp. Stat. 5/2-621(b); *see also Mitchell*, 2019 WL 1787587, at *3 ("[T]he majority of courts in this district hold that section 2-621 cannot be the basis for finding fraudulent joinder because any dismissal is merely conditional.") (citation and quotation marks omitted). Because Andersen's primary argument succeeds, the Court declines to reach this alternative argument.

[4] Having determined that Andersen enjoys a reasonably possibility of success on her strict liability claim that is sufficient to defeat a theory of fraudulent joinder, the Court sees no reason to predict how a state court would rule on her negligence claim.

## II. Attorneys' Fees

Next, Andersen argues that the Manufacturer Defendants should be required to pay the attorneys' fees she accumulated in litigating this motion. Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Generally, "courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 134 (2005). "[I]f clearly established law d[oes] not foreclose a defendant's basis for removal," the Seventh Circuit warns, "then a district court should not award attorney's fees." *Lott v. Pfizer, Inc.*, 492 F.3d 789, 793 (7th Cir. 2007).

Measured against that standard, Andersen's request for attorneys' fees misses the mark. There are no Supreme Court or Seventh Circuit opinions that squarely address the circumstances here. And, contrary to Andersen's suggestion, the fact that other district courts have remanded similar complaints does not mean that clearly established law foreclosed the Manufacturer Defendants' arguments. *See Bank of Am., N.A. v. Moglia*, 330 F.3d 942, 949 (7th Cir. 2003) (observing that a district court decision is not "an authoritative statement of Illinois law"). The bottom line is that Andersen cannot recover attorneys' fees for litigating this motion.

## **Conclusion**

For the reasons stated above, Andersen's motion is granted. The Clerk is directed to remand this case to the Circuit Court of Cook County forthwith.


**IT IS SO ORDERED.**  **ENTERED  1/28/20**

*/s/ John Z. Lee*

_____

**John Z. Lee**
**United States District Judge**